

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>ADRIAN CHAVEZ-NAVA, AKA Chavez Adrian Nava Peralta<br><br>Defendant - Appellant. | Nos. 15-50040<br>15-50042<br><br>D.C. Nos. 3:14-cr-02570-LAB-1<br>3:14-cr-07098-LAB-1<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Larry Alan Burns, District Judge, Presiding

Argued and Submitted April 8, 2016
Pasadena, California

Before: FARRIS, SENTELLE**and M. SMITH  Circuit Judges.

Chavez-Nava appeals his conviction of being a removed alien found in the

United States in violation of 8 U.S.C. § 1326, his subsequent sentencing for this

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable David Bryan Sentelle, Senior Circuit Judge for the U.S. Court of Appeals for the District of Columbia Circuit, sitting by designation.

violation, as well as his sentencing for a violation of his supervised release on a prior conviction for illegal reentry in 2011. We have jurisdiction under 28 U.S.C. § 1291 and affirm the conviction and sentencing decisions.

In 2011, Chavez-Nava pleaded guilty to illegal reentry in the Eastern District of Washington and was sentenced to a 27-month prison term and 3 years of supervised release. On August 13, 2014, while still on supervised release, Chavez-Nava returned to the United States, but was apprehended near the border. Chavez-Nava was prosecuted on one count of being a "Removed Alien Found in the United States," in violation of 8 U.S.C. § 1326(a) and (b). Based on this new charge, a probation officer in the Eastern District of Washington petitioned the district court to revoke Chavez-Nava's supervised release. The Eastern District of Washington matter was consolidated with the § 1326 case in the Southern District of California.

To prove alienage at trial, the government presented evidence of Chavez-Nava's three prior deportations, his admissions that he was a Mexican citizen with no right to enter the United States, circumstantial evidence from the facts of his entry, including that he entered by coming over the fence, and that he tried to hide from Border Patrol agents. A Border Patrol agent testified about the immigration process and about Chavez-Nava's immigration status and history. The agent confirmed Chavez-Nava's wife's status as a U.S. citizen and that his mother was naturalized in

2007. The agent also confirmed that his mother, after naturalizing, petitioned for status for two people not including Chavez-Nava. Chavez-Nava disputed (1) whether he was an alien and (2) whether he had official permission to reenter the country. Chavez-Nava noted that one Alien-File (A-File) document included a second, different A-File number showing that Chavez-Nava had applied for legal status in 1989. Neither Chavez-Nava's A-File nor the relevant databases showed that he had received permission to enter the United States at any time.

During closing arguments, the prosecutor stated that the defense's position with regard to Chavez-Nava's potential permission to reenter was "the grossest speculation." E.R. at 220. As to the element of alienage, the prosecutor read from the reasonable doubt instruction, noting that reasonable doubt "is not based purely on speculation." E.R. at 224, 225. He argued that the case was "straightforward. . . . The defendant is an alien. . . . [T]he speculation, the machinations, trying to say, well, maybe he was a U.S. citizen, there is no evidence that he was a U.S. citizen." E.R. at 225. The defense's closing focused on whether the government had proved beyond a reasonable doubt that Chavez-Nava was an alien and that Chavez-Nava did not have permission to enter the United States. In rebuttal, the government stated that "there is no doubt that the defendant is an alien," E.R. at 235, and described Chavez-Nava's arguments on alienage as "the grossest speculation," E.R. at 237.

3

The jury found Chavez-Nava guilty of being a removed alien found in the United States, and the court concluded that Chavez-Nava violated the terms of his supervised released. The court applied a 12-level enhancement to the sentence based on a prior conviction for distribution of cocaine under Revised Code of Washington (RCW) § 69.50.401.

On the conviction for being a convicted alien found in the United States, the district court imposed a 36-month custodial sentence to be followed by 3 years of supervised release. On the supervised release violation, the district court imposed a 4-month custodial sentence to be served consecutive to the 36-month custodial term. The district court imposed an additional 32 months of supervised release to run concurrently with the 3 years of supervised release imposed for being a convicted alien found in the United States.

On appeal, Chavez-Nava argues that this Court should vacate and remand for a new trial because of prosecutorial misconduct; that the district court erred in calculating the sentencing enhancements for this conviction, and therefore, we should remand for re-sentencing; and that the district court was substantively unreasonable in imposing two concurrently running periods of supervised release for the violation of his prior and then-current term of supervised release. We affirm.

As to the claims of prosecutorial misconduct, Chavez-Nava argues that the prosecutor improperly vouched for the government's case, degraded the defense's case, and that the prosecutor diluted the burden of proof in argument. Because Chavez-Nava did not raise an objection to the prosecutor improperly vouching, we review for plain error. *See United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011). With respect to Chavez-Nava's other claims of prosecutorial misconduct, we review for abuse of discretion. *See id.* at 1120; *see also* E.R. at 220, 225, 237.

The prohibition on vouching lies in overtly conveying the prosecutor's personal viewpoint that the evidence is overwhelming. *See United States v. Ruiz*, 710 F.3d 1077, 1085 (9th Cir. 2013). However, even if the prosecutor's repeated characterization of the government's evidence as "overwhelming" crossed the line into prosecutorial misconduct, there is no reasonable probability that absent those comments, there would have been a different result. The record in this case shows that the government presented strong and varied evidence for its position, including that Chavez-Nava was previously deported three times. E.R. at 172-75.

The district court did not plainly err in applying a 12-level increase for Chavez-Nava's 1989 conviction under RCW § 69.50.401 after concluding that the conviction was a categorical drug trafficking offense. RCW § 69.50.401 makes it a crime to "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled

substance." RCW § 69.50.401(a) (1989). For the first time on appeal, Chavez-Nava challenges the sentencing enhancement on the basis that an individual can be convicted as an accomplice under § 69.50.401(a), which would only require a knowing *mens rea*. Specifically, he argues that because a conviction under the generic definition of drug trafficking offenses requires a higher *mens rea* of purpose or intent, the district court erred in applying a 12-level sentencing enhancement for his conviction under 28 U.S.C. § 1326.

U.S.S.G. § 2L1.2(b)(1)(A) provides for an offense level increase if the defendant has been deported subsequent to a conviction for a "drug trafficking offense." U.S.S.G. § 2L1.2(b)(1)(A). "Prior convictions of offenses counted under subsection (b)(1) [which includes "drug trafficking offense"] include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2 cmt. 5. Moreover, "[a] conviction for aiding and abetting a drug trafficking offense qualifies as a predicate offense under the Guidelines." *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1097 (9th Cir. 2007).

Although there may be a theoretical possibility that a defendant could be prosecuted as an accomplice with only a knowing *mens rea* under § 69.50.401, Chavez-Nava has not shown the realistic probability of prosecution as an accomplice with only a knowing *mens rea* under the drug offense statute in Washington. *Cf.*

6

*United States v. Burgos-Ortega*, 777 F.3d 1047, 1055-56 (9th Cir. 2015). Therefore, it is not "obvious," as required for plain error, that the Washington statute would encompass liability with only a knowing *mens rea*. *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir. 2012).

Finally, on the grounds that the sentence was substantively unreasonable, Chavez-Nava appeals the district court's decision to impose two concurrently running periods of supervised release as a "triple deterrent" to future reentry.

In determining substantive reasonableness, "we are to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range." *United States v. Autery*, 555 F.3d 864, 870 (9th Cir. 2009). Given Chavez-Nava's prior conviction and illegal reentries, the district court did not abuse its discretion by adding an additional term of supervised release. *See United States v. Gutierrez-Sanchez*, 587 F.3d 904, 908 (9th Cir. 2009). Therefore, the district court's decision to impose two concurrently running periods of supervised release was not substantively unreasonable.

**AFFIRMED.**